IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TARA THAPA,                          )
                                     )
            Plaintiff,               )
                                     )
v.                                   )          CIVIL ACTION
                                     )          NO. 1:13-CV-01031-AT
LAKESHORE ATLANTA                    )
APARTMENTS, LLLP and                 )
VENTRON MANAGEMENT, LLC,             )
                                     )
            Defendants.              )

**DEFENDANTS' RENEWED MOTION TO DISMISS
AND INCORPORATED MEMORANDUM OF LAW**

COME NOW defendants Lakeshore Atlanta Apartments, LLLP and Ventron Management, LLC and, pursuant to Fed. R. Civ. P. 12(b)(6), move to dismiss plaintiff's first amended complaint [Doc. #12] on the ground that it fails to state a claim upon which relief can be granted.  In support of this motion, defendants show the Court as follows:

**I.**

**INTRODUCTION**

This case is a premises liability action involving an alleged third-party criminal attack on plaintiff by an unknown person at the Lakeshore Apartments in

Clarkston, Georgia, on November 9, 2010. At that time, Lakeshore owned the premises, and Ventron provided property management services. Plaintiff sued defendants primarily on the theory that they are liable for the criminal acts of the unknown assailant. However, when plaintiff signed a lease and other documents to rent an apartment at Lakeshore Apartments, he agreed that defendants would not be liable for any injuries he sustained as a result of third-party criminal acts. Defendants now ask the Court to do nothing more than enforce the exculpatory clauses to which plaintiff agreed when he rented the apartment.

After removing this case from the State Court of Fulton County, Georgia, on March 29, 2013, defendants filed a motion to dismiss in which they argued that plaintiff's complaint failed to state a claim upon which relief could be granted. On July 8, 2013, the Court entered an order granting defendants' motion, but not for the reasons asserted by defendants in their motion. Instead, the Court did not reach defendants' arguments because it found that plaintiff's complaint did not satisfy the pleading requirements set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Plaintiff's complaint was not subject to the *Iqbal/Twombly* pleading requirements when it was filed in state court, and so the Court granted plaintiff leave to file an amended complaint. Plaintiff filed his first amended complaint on July 22, 2013, but defendants believe

that this complaint also fails to state a claim upon which relief could be granted for the same reasons as the original complaint.  Accordingly, defendants are asserting the same arguments against the first amended complaint that they previously asserted against the original complaint and that the Court declined to reach in its July 8, 2013 order.

## II.

## FACTUAL BACKGROUND

Plaintiff and his family began living at the Lakeshore Apartments on April 16, 2009.  The term of his initial lease ended on October 31, 2009, and so he signed a renewal lease for the period November 1, 2009, through October 31, 2010.  Paragraph 15 of the renewal lease provides as follows:

> Management shall not be liable for loss or damage due to criminal acts of other parties. . . .  Management does not offer or provide security services for resident's protection or protection of resident's personal property.  Resident agrees to look solely to public law enforcement, emergency services, or fire services for security services or protection.  *Resident acknowledges that he has an obligation to exercise due care for his own safety and welfare and that management is not liable for the criminal acts of other persons.*

(Peebles Decl. Ex. 1, ¶ 15 (emphasis added).)[1]  In addition, paragraph 34 of the renewal lease provides that "[a]ll previously signed addenda apply."  (Peebles Decl. Ex. 1, ¶ 34.)  One such addendum is entitled "Resident Security [illegible] and Insurance Acknowledgements" and provides as follows:

> Each resident has the responsibility to protect himself or herself and to maintain appropriate insurance to protect his or her belongings. . . .
>
> . . . .
>
> It is fact that no security system, courtesy patrol or electronic safety device can guarantee protection against crime.  Even elaborate security systems are subject to mechanical malfunction, tampering, human error or personnel absenteeism, and can be defeated or avoided by clever criminals.  Therefore, residents should always proceed on the assumption that no security systems exist.  The best safety measures are those precautions that can be performed as a matter of common sense and habit.
>
> . . . .
>
> ACKNOWLEDGEMENT BY RESIDENT:   I have read, understood and agree with the above notice.  I have received no representations or warranties, either expressed or implied, as to any security system on the property.  Management has not, in any way, stated or implied to me that security of person or property is provided, promised, or guaranteed or that the apartment community was or will be free from crime. . . .  The responsibility for protecting me, my property, and my

---

[1]     The Declaration of Shaunta Peebles is attached as Exhibit A, and a true and correct copy of the renewal lease is attached as Exhibit 1 to Peebles' Declaration.

family, guests and invitees from acts of crime is the sole responsibility of myself, and law enforcement agencies. . . .

> *I agree to release and hold harmless Management from claims arising out of criminal acts of other residents and third parties. I agree that Management shall not be liable to me based upon any claim that security was not provided . . . .*

(Peebles Decl. Ex. 2 (emphasis added).)[2]  Finally, both the lease and the addendum contain merger clauses.  The merger clause in the lease provides as follows:

> This lease, any referenced addenda, and any addenda referring to the lease or apartment shall constitute the entire contract between the parties, and no prior negotiations, representations, or oral statements are binding.  This lease may not be modified except with the express written consent of management.

(Peebles Decl. Ex. 1, ¶ 30.)   The merger clause in the addendum provides as follows:

> This document contains the entire agreement with respect to its subject matter.  Management representatives have no authority to make [illegible] modifications in the terms of this document, except when in writing and signed.

(Peebles Decl. Ex. 2.)

---

[2]    A true and correct copy of the addendum is attached as Exhibit 2 to Peebles' Declaration.

On November 9, 2010, plaintiff was residing at the Lakeshore Apartments subject to the terms of the lease and addendum quoted above.  Because Lakeshore no longer owns the property and Ventron no longer manages the property, defendants no longer have plaintiff's tenant file.  As a result, defendants do not know if plaintiff signed another lease that would have been in effect on November 9, 2010.  Regardless, the terms of the lease and addendum quoted above would have applied to plaintiff on November 9, 2010, in one of two ways.  First, if plaintiff was residing in his apartment on a month-to-month basis as provided in paragraph 6 of the renewal lease, all of the other terms of that lease would have continued in effect.  (Peebles Decl. ¶ 3.)  Second, if plaintiff was residing in his apartment under the terms of a new lease, the new lease would have used the same form as the renewal lease and would have included the same special stipulations that are included in paragraph 34 of the renewal lease, with the possible exception of the amount of the monthly rental rate.  (*Id.*)  One of these options must be true since there is no dispute, at least for purposes of this motion, that plaintiff was residing at the Lakeshore Apartments on November 9, 2010.  (First Am. Compl. ¶ 15.)  In fact, plaintiff alleges that "[o]n November 9, 2010, a lease was in effect between Plaintiff and Defendants."  (*Id.* ¶ 26.)  Thus, whether through the renewal lease as extended on a month-to-month basis, or through a new lease using the

same form and including the same special stipulations as the renewal lease, the provisions quoted above governed plaintiff's tenancy at the Lakeshore Apartments.

Turning finally to the facts of this case, plaintiff alleges that on November 9, 2010, "while legally at The Apartments, as an invitee, [he] was attacked by unknown persons." (*Id.* ¶ 18; *see also id.* ¶¶ 33-34.) Plaintiff further alleges that defendants, as the owner and manager of the property, are liable for his injuries and damages because they breached their duty under O.C.G.A. § 51-3-1 to exercise ordinary care to maintain the property in a safe condition for their invitees after acquiring knowledge about the need for security on the property due to prior crimes. (*Id.* ¶¶ 36-61.) Plaintiff also alleges that defendants are liable for (1) negligence per se; (2) negligent supervision, hiring, training, and retention of unnamed employees and agents; (3) fraud/misrepresentation; (4) breach of contract; and (5) nuisance. (*Id.* ¶¶ 52, 62-75.) For the reasons explained below, these claims should be dismissed with prejudice.

### III.

### <u>STANDARD OF REVIEW</u>

The standard of review for a motion to dismiss under Fed. R. Civ. P. 12(b)(6), as construed in *Iqbal* and *Twombly*, is familiar and does not need to be repeated here. Less commonly considered, however, is the issue of what matters

outside the complaint may be considered under Fed. R. Civ. P. 12(b)(6) without converting a motion to dismiss into a motion for summary judgment under Fed. R. Civ. P. 56.   The Eleventh Circuit has held that "a document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity."   *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) (per curiam); *see also United States ex rel. Saldivar v. Fresenius Medical Care Holdings, Inc.*, No. 1:10-CV-01614-AT, 2012 WL 5866189, at *4 (N.D. Ga. Mar. 26, 2012) ("Courts may consider evidence extrinsic to the pleadings on a Rule 12(b)(6) motion to dismiss if (1) the documents are referred to in the complaint; (2) the evidence is central to the plaintiff's claim; and (3) the evidence's authenticity is not in question.").

Under this authority, it is appropriate for the Court to consider the renewal lease and the addendum under Fed. R. Civ. P. 12(b)(6) even though plaintiff did not attach these documents to the first amended complaint as exhibits.   The allegations in the first amended complaint refer to the lease, which includes the addendum, and these documents are central to plaintiff's claims.   For example, plaintiff can maintain a claim under O.C.G.A. § 51-3-1 only if he was defendants' invitee, and he was defendants' invitee only if he was lawfully on the premises as a tenant, which can be shown by the lease.   Further, plaintiff alleges that defendants

breached their contractual duty to provide security and to provide a safe living environment.  (First Am. Compl. ¶ 64.)  The lease, including the addendum, are necessary for plaintiff to succeed on at least some of his claims.  Importantly, plaintiff does not assert any factual allegations in the first amended complaint that contradict the provisions in these documents.  Thus, the Court's consideration of these documents would not violate the general principle of assuming the truth of all facts alleged in the first amended complaint for purposes of a motion to dismiss.

**IV.**

**<u>ARGUMENT AND CITATION OF AUTHORITY</u>**

**A.    NEGLIGENT SECURITY UNDER O.C.G.A. § 51-3-1**

Plaintiff's first amended complaint fails to state a claim upon which relief can be granted under O.C.G.A. § 51-3-1 because the renewal lease and addendum signed by plaintiff exculpate defendants from liability for third-party criminal acts. The exculpatory clauses in these documents are enforceable because they are not contrary to public policy.

The general principle governing exculpatory clauses in Georgia has been stated as follows:

> It is the paramount public policy of this state that courts will not lightly interfere with the freedom of parties to contract.  A contracting party may waive or renounce that which the law has established in his or her favor, when it

> does not thereby injure others or affect the public interest.  Exculpatory clauses in Georgia are valid and binding, and are not void as against public policy when a business relieves itself from its own negligence.

*Neighborhood Assistance Corp. of Am. v. Dixon*, 265 Ga. App. 255, 256, 593 S.E.2d 717, 718 (2004) (internal quotation marks omitted); *see also* O.C.G.A. § 1-3-7 ("Laws made for the preservation of public order or good morals may not be dispensed with or abrogated by any agreement.  However, a person may waive or renounce what the law has established in his favor when he does not thereby injure others or affect the public interest.").  Thus, an exculpatory clause in a contract, such as a lease, is binding and enforceable unless it is contrary to public policy.

It is true that some cases and commentators have suggested that all exculpatory clauses in leases are contrary to public policy.  *See, e.g.*, *Cain v. Vontz*, 703 F.2d 1279, 1282 (11th Cir. 1983); *Levine v. Peachtree-Twin Towers Co.*, 161 Ga. App. 103, 105, 289 S.E.2d 306, 309 (1982); Charles R. Adams, III, Georgia Law of Torts § 23-2 (2012-2013 ed.); 13 Ga. Jur. *Personal Injury & Torts* § 21:57.  A closer examination of the basis for such suggestions, however, shows that they are not supported by the law.  According to defendants' research, these suggestions are based on the Georgia Supreme Court's decision in *Country Club Apartments, Inc. v. Scott*, 246 Ga. 443, 271 S.E.2d 841 (1980), in which that court held that a landlord could not avoid its implied warranty that the premises were in

good repair by virtue of an exculpatory clause in the lease.  The court's decision was based on the predecessors to O.C.G.A. §§ 13-8-2(b) and 44-7-2(b), neither of which apply in this case.

O.C.G.A. § 13-8-2(b) prohibits exculpatory clauses in contracts relating to "the construction, alteration, repair, or maintenance of a building structure, appurtenances, and appliances, including moving, demolition, and excavating connected therewith," but plaintiff's claims in this case are based on defendants' alleged failure to prevent the criminal conduct of a third-party.  Plaintiff's claims have nothing to do with construction, alteration, repair, or maintenance of buildings.  Similarly, O.C.G.A. § 44-7-2(b) prohibits exculpatory clauses that relieve a property owner of its obligations under O.C.G.A. §§ 44-7-13 and 44-7-14, but those statutes do not apply in this case either.

O.C.G.A. § 44-7-13 "imposes contractual, but not tort, liability on a landlord."  *Colquitt v. Rowland*, 265 Ga. 905, 907, 463 S.E.2d 491, 492 (1995). "The clear import of this code section is that the landlord is liable for the payment of costs for repairs or improvements made to the property by the tenant."  *Id.* at 906-07, 463 S.E.2d at 492.  Plaintiff has made no such claim in this case, and so O.C.G.A. § 44-7-13 does not apply.  O.C.G.A. § 44-7-14, on the other hand, governs "[a] landlord's liability to a third person who is injured on property which

was relinquished by rental or under a lease." *Id.* at 906, 463 S.E.2d at 492.   In other words, this statute applies only when the owner has fully parted with possession of the property, such as by leasing an apartment to a tenant.   *Plott v. Cloer*, 219 Ga. App. 130, 131, 464 S.E.2d 39, 40 (1995) (en banc).   On the other hand, when the allegedly hazardous condition that caused an injury involves the common area of an apartment complex to which residents are allowed access, the owner's duty arises under O.C.G.A. § 51-3-1.   *Id.*; *Commerce Props., Inc. v. Linthicum*, 209 Ga. App. 853, 853-54, 434 S.E.2d 769, 770-71 (1993).   Here, plaintiff was attacked in a common area outside his apartment, which means that his claim is governed by O.C.G.A. § 51-3-1, not O.C.G.A. § 44-7-14.   The consequence of this is that the Georgia Supreme Court's decision in *Country Club Apartments* is inapposite to the facts of this case.[3]

---

[3]      Defendants recognize that the Court expressed some skepticism about this argument in its July 8, 2013 order.  Defendants also recognize, as noted above, that there is authority adverse to their position on this issue.  However, defendants contend that if the relevant cases are really scrutinized for what they actually hold, it will be clear that defendants' position on this issue is correct.  The authority adverse to defendants' position always comes back to the Georgia Supreme Court's decision in *Country Club Apartments*.  It is important to recognize that *Country Club Apartments* did not involve the statute at issue in this case, O.C.G.A. § 51-3-1.  Instead, *Country Club Apartments* involved the predecessors to O.C.G.A. §§ 44-7-13 and 44-7-14, which deal with a landlord's duty to repair and his liability for substantial improvements to the property, defective construction, and failure to keep the property in repair.  These things are plainly within the ambit

Having established that plaintiff's claims against defendants could arise only under O.C.G.A. § 51-3-1, the question is whether the duty imposed by that statute can be waived by a tenant in a lease.  As discussed above, O.C.G.A. §§ 13-8-2(b) and 44-7-2(b) do not prohibit such a waiver, and defendants' research does not reveal any public policy prohibiting such a waiver.  Indeed, in light of the general principle allowing a person to waive a legal right as long as doing so is not contrary to public policy, plaintiff must identify a public policy that affirmative prohibits one from waiving his rights under O.C.G.A. § 51-3-1.  Defendants have been unable to find any such public policy.

In fact, a case decided by the Georgia Court of Appeals in 2002 indicates that it is not contrary to public policy to allow a person to waive his rights under O.C.G.A. § 51-3-1.  In *Bradford Square Condominium Association, Inc. v. Miller*, 258 Ga. App. 240, 573 S.E.2d 405 (2002), the Georgia Court of Appeals held that the condominium association did not owe a duty to its members under O.C.G.A. §

---

of O.C.G.A. § 13-8-2(b), and so it was proper for the Georgia Supreme Court to apply that statute to the facts of that case.  This case is different because plaintiff's claims do not arise out of an alleged failure to repair or maintain; they arise out of an alleged failure to provide security.  Thus, plaintiff's claims are not governed by O.C.G.A. §§ 44-7-13 and 44-7-14, and so the entire basis for the Georgia Supreme Court's decision in *Country Club Apartments* is not applicable to this case. Defendants ask the Court to analyze this issue independently and not just assume, as the Georgia appellate courts have done for almost 33 years, that *Country Club Apartments* stands for something that it really does not stand for.

51-3-1 to provide security for the common areas of the premises against third-party criminal acts. The basis for the court's holding was the following exculpatory clause contained within the association's governing documents:

> *Security*. The Association may, from time to time, provide measures of security on the condominium property; however, the Association is not a provider of security and shall have no duty to provide any security on the condominium property. The obligation to provide security lies solely with each unit owner individually. The Association shall not be held liable for any loss or damage by reason of failure to provide adequate security or ineffectiveness of security measures undertaken.

*Id.* at 242, 573 S.E.2d at 407. Because the members were free to waive their rights under O.C.G.A. § 51-3-1, the court found that the association did not owe a security-related duty to the plaintiff's decedent, who was killed as a result of a third-party criminal act. *Id.* at 246-48, 573 S.E.2d at 410-11.

Although the court in *Bradford Square* emphasized that its decision was based on "the unique interrelationship between a condominium association and the unit owners/members that are, in fact, the association," *id.* at 249, 573 S.E.2d at 412, its rationale is nevertheless applicable to this case. Defendants acknowledge the differences between a condominium association-member relationship and a landlord-tenant relationship, but those differences are irrelevant if it is contrary to public policy to allow a person to waive his rights under O.C.G.A. § 51-3-1. As

discussed above, the freedom to contract in a way that waives a legal right does not apply when such a waiver would be contrary to public policy.  Thus, despite the differences in the two types of relationships, the court in *Bradford Square* could not have upheld the exculpatory clause if the public policy of Georgia prohibits the waiver of rights under O.C.G.A. § 51-3-1.  Because *Bradford Square* holds that such a waiver is not contrary to public policy, there is no impediment to enforcing the exculpatory clause in this case.  *See also Hayes v. Lakeside Village Owners Ass'n, Inc.*, 282 Ga. App. 866, 871-73, 640 S.E.2d 373, 377-78 (2006) (holding that an exculpatory clause relieving the defendant of its duty under O.C.G.A. § 51-3-1 was enforceable and did not violate Georgia public policy).

The enforceability of the exculpatory clauses at issue in this case is confirmed by a recent decision of the State Court of Fulton County in a case involving virtually identical circumstances as this case.  In that case, the plaintiff was shot by a third-party while he was in a common area of the apartment complex where he lived.  His lease contained a provision that is almost identical to paragraph 15 of plaintiff's renewal lease (quoted above), and the defendants moved for summary judgment based on that lease provision.  The court granted summary judgment for the defendants because it found that the exculpatory clause in the lease was not ambiguous and did not violate any public policy of Georgia,

which meant that the defendants did not owe the plaintiff a duty under O.C.G.A. §

51-3-1.  In reaching this conclusion, the court reviewed the statutory duties that

cannot be waived as a matter of public policy, and it found that the Georgia

General Assembly has not included the duty imposed by O.C.G.A. § 51-3-1 among

the statutory duties that cannot be waived.  The court explained,

> The question presented is whether an exculpatory
> provision purporting to relieve a landlord of its duty to its
> tenant under O.C.G.A. § 51-3-1 is void as against public
> policy.  The legislature has specifically provided which
> exculpatory provisions in a lease agreement between a
> landlord and tenant are void as against public policy.  If
> the legislature had intended to include O.C.G.A. § 51-3-1
> within that prohibition, it could have done so.  Unless
> and until the legislature or appellate courts of this State
> clearly indicate that such provisions are void as against
> public policy, this Court is unwilling to so hold.

*Jusupovic v. HMI Enters., Inc.*, No. 2007-EV-003078-H, at 7-8 (State Court of

Fulton County Sept. 6, 2011) (order granting defendants' motion for summary

judgment).[4]

## B.   NEGLIGENCE PER SE

Plaintiff alleges that defendants were negligent per se because they violated

O.C.G.A. § 51-3-1.  (First Am. Compl. ¶ 52.)  This statute provides an insufficient

basis for this claim for two reasons.  First, it is too vague because it does not

---

[4]    A copy of the order in *Jusupovic* is attached as Exhibit B.

require an owner or occupier to act or to refrain from acting in any specific way. *Motes v. 6 "S" Co.*, 186 Ga. App. 67, 68, 366 S.E.2d 358, 360 (1988) ("So long as these duties remained undefined or defined only in abstract general terms, a breach is not properly denominated negligence per se; but when any specific act or dereliction is so universally wrongful as to attract the attention of the lawmaking power, and this concrete wrong is expressly prohibited by law or ordinance, a violation of this law, a commission of the specific act forbidden, is, for civil purposes, correctly called negligence per se.").   Second, this statute is a codification of the common law, *Williamson v. Kidd*, 65 Ga. App. 285, 15 S.E.2d 801, 802 (1941), and the violation of a statute that merely codifies a common-law rule does not constitute negligence per se.  *Burns v. Colonial Stores, Inc.*, 90 Ga. App. 492, 494-95, 83 S.E.2d 259, 262 (1954).  Even if a claim for negligence per se could be based on O.C.G.A. § 51-3-1, plaintiff's claim would be duplicative of the claim he has already asserted directly under this statute and would be subject to dismissal for the same reasons discussed in Part IV(A).

## C.   NEGLIGENT   SUPERVISION,   HIRING,   TRAINING,   AND RETENTION

Plaintiff alleges that defendants negligently hired, trained, supervised, and retained unnamed employees, (First Am. Compl. ¶¶ 57-61), but he does not allege that these unnamed employees perpetrated the assault on him.  Because a claim for

negligent hiring, training, supervision, and/or retention is based on an employee of the defendant committing the tortious act that caused the plaintiff's injury, *TGM Ashley Lakes, Inc. v. Jennings*, 264 Ga. App. 456, 459-63, 590 S.E.2d 807, 813-16 (2003) (en banc) (where the alleged criminal was a maintenance employee of the defendant), plaintiff's claim fails as a matter of law in the absence of an allegation that the unknown assailant was defendants' employee.

## D.   FRAUD/MISREPRESENTATION

Plaintiff alleges that defendants' employees negligently and/or intentionally misrepresented to plaintiff and residents that the apartment complex was safe and secure. (First Am. Compl. ¶¶ 62-65.)  Aside from the issue of whether statements about how the property was maintained and whether the property was safe and secure are factual statements or mere opinions, *Anderson v. Atlanta Comm. for Olympic Games, Inc.*, 261 Ga. App. 895, 899-900, 584 S.E.2d 16, 21 (2003) (holding that statements about Atlanta being "the safest place on the planet" were mere opinions that could not support a claim for fraud), this claim is barred by the merger clauses in the lease and addendum.  *Levine*, 161 Ga. App. at 104, 289 S.E.2d at 308.

## E.     BREACH OF CONTRACT

Plaintiff alleges that defendants breached their contractual duty to provide security and to provide a safe living environment.  (First Am. Compl. ¶ 64.)  The only contracts between plaintiff and defendants are the leases, including the addenda, but there is no provision in these contracts that required defendants to provide security for plaintiff.  In fact, Exhibits 1 and 2 specifically provide that defendants were not providing security for plaintiff, and plaintiff acknowledged as much by signing these documents.  Thus, plaintiff has failed to identify any written contract that defendants breached.  To the extent that plaintiff relies on an alleged oral contract that required defendants to provide security, such an argument is foreclosed by the merger clauses in Exhibits 1 and 2.

## F.     NUISANCE

Plaintiff alleges that defendants created a nuisance on the property by allowing crime to occur there unabated.  (First Am. Compl. ¶¶ 66-75.)  Because the alleged nuisance is crime and the alleged injuries are the physical injuries caused by the unknown criminal, this claim is barred by the exculpatory provisions in Exhibits 1 and 2 for the same reasons discussed in Part IV(A).  *Levine*, 161 Ga. App. at 105, 289 S.E.2d at 309 ("We know of no reason why the language of the lease quoted above would not, under the facts of this case, be a bar to appellants'

recovery in nuisance . . . .").  Even if this claim is not barred by the exculpatory provisions in Exhibits 1 and 2, it does not exist independently of plaintiff's premises liability claim.  As the Georgia Court of Appeals has noted, combining a premises liability claim with other claims, such as negligence per se and nuisance, is redundant because these other claims "stem from [the defendant's] alleged failure to keep the premises safe and, essentially, constitute a breach of the same duty to protect [the plaintiff]."  *Traicoff v. Withers*, 247 Ga. App. 428, 429 n.5, 544 S.E.2d 177, 179 n.5 (2000); *see also Barnes v. Morganton Baptist Ass'n, Inc.*, 306 Ga. App. 755, 759-60, 703 S.E.2d 359, 363 (2010).

Even if this claim is analyzed separately from plaintiff's premises liability claim, it is still not a valid claim because crime is not a nuisance (legally speaking). "[T]he essential element of nuisance is control over the cause of the harm," and so the very essence of a nuisance is that it is something that the owner of the property from which it emanates can control or stop.  *Bailey v. Annistown Road Baptist Church, Inc.*, 301 Ga. App. 677, 688, 689 S.E.2d 62, 72 (2009) (internal quotation marks omitted); *see also Bradford Square*, 258 Ga. App. at 248, 573 S.E.2d at 411 (holding that the owner of the property cannot be liable if it has no duty to control or stop the nuisance).  Indeed, one remedy that a plaintiff can seek for a nuisance is an injunction requiring the owner of offending property to abate the nuisance, but

it would be an exercise in futility for a court to issue an injunction requiring a property owner to stop all crime on its property. Simply put, the concept of nuisance does not "fit" with the concept of premises liability. *Landings Ass'n, Inc. v. Williams*, 309 Ga. App. 321, 329-30, 711 S.E.2d 294, 301 (2011) (en banc), *rev'd on other grounds*, 291 Ga. 397, 728 S.E.2d 577 (2012).

**V.**

**CONCLUSION**

For the foregoing reasons, the Court should grant defendants' motion and dismiss with prejudice the claims asserted in plaintiff's first amended complaint.

FREEMAN MATHIS & GARY, LLP

_____/s/ _Jacob E. Daly_____
Sun S. Choy
Georgia Bar No. 025148
schoy@fmglaw.com
Jacob E. Daly
Georgia Bar No. 203723
jdaly@fmglaw.com

Attorneys for Defendants

100 Galleria Parkway
Suite 1600
Atlanta, GA 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)
C:\NRPortbl\iManage\JDALY\827394_1.DOC

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify, pursuant to Local Rule 7.1(D), that the foregoing **DEFENDANTS'**

**RENEWED     MOTION     TO     DISMISS     AND     INCORPORATED**

**MEMORANDUM OF LAW** has been prepared in accordance with Local Rule

5.1(C) (Times New Roman font, 14 point).

/s/ *Jacob E. Daly*

Jacob E. Daly
Georgia Bar No. 203723
jdaly@fmglaw.com

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway
Suite 1600
Atlanta, GA 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

I certify that I have electronically filed the foregoing **DEFENDANTS'**
**RENEWED   MOTION   TO   DISMISS   AND   INCORPORATED**
**MEMORANDUM OF LAW** with the Clerk of Court using the CM/ECF system
which will automatically send electronic mail notification of such filing to the
following counsel of record who are CM/ECF participants:

James A. Rice, Jr., Esq.
JAMES A. RICE, JR., P.C.
563 Spring Street, N.W.
Atlanta, GA 30308

This 5th day of August, 2013.

                          /s/ *Jacob E. Daly*
                         Jacob E. Daly
                         Georgia Bar No. 203723
                         jdaly@fmglaw.com

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway
Suite 1600
Atlanta, GA 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)