IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TARA THAPA,                                )
                                           )
                          Plaintiff,       )        CIVIL ACTION
vs.                                        )
                                           )        FILE NO. 1:13-CV-01031-AT
LAKESHORE ATLANTA                          )
APARTMENTS, LLLP and                       )
VENTRON MANAGEMENT,                        )
LLC,                                       )
                                           )
                          Defendants.      )

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' RENEWED MOTION TO DISMISS

COMES NOW, Plaintiff Tara Thapa (hereinafter "Plaintiff") and files

Plaintiff's Memorandum of Law In Opposition to Defendants' Renewed Motion to

Dismiss, showing this Honorable Court as follows:

## STATEMENT OF FACTS

### The Incident

On November 9, 2010, Plaintiff was a tenant/invitee at Defendants'

Premises when he was attacked by unknown assailants resulting in significant and

permanent injuries (Plaintiff's First Amended Complaint ¶¶ 15, 18, 19).

**Plaintiff's First Amended Complaint**

Plaintiff set forth factual allegations as to Defendants' knowledge of substantially similar prior crimes at The Apartments between 2008-2010 including rapes, shootings, batteries, drug sales of cocaine and marijuana, aggravated assaults, batteries, assaults, armed robberies, burglaries, suspicious persons, trespassers and carjackings. (Id. at ¶¶ 40, 41, 42, 43, 44, 45, 46, 47, 48, 49).

Plaintiff also set forth factual allegations related to negligently maintaining, repairing inspecting and securing The Apartments. (Id. at ¶¶ 36, 37, 38, 39, 48, 58, 59, 60, 65, 68). Further, Plaintiff set forth allegations related to Defendants' negligent hiring, retaining and supervising employees and agents. (Id. at ¶¶ 57, 58, 59, 60, 61). Plaintiff also set forth allegations related to the breach of contract, fraud and nuisance (Id. at ¶¶ 62, 63, 64, 65, 66, 67, 68, 69, 70, 71).

**The Lease**

The Lease relied upon by Defendants (Paragraph 15 of the Lease) does not contain an exculpatory clause. (Plaintiff's First Amended Complaint ¶ 30).

Plaintiff's original Memorandum of Law in Opposition to Defendants' Motion to Dismiss noted Defendants' failure to provide the Court with the full paragraph Defendants rely upon (paragraph 15) revealing that it addresses only property loss. Defendants' renewed Motion again fails to even inform the Court

that the title of the lease provision Defendants rely upon is "**Property Loss and Insurance**" [emphasis in original].

The lease paragraph Defendants rely upon ("**Property Loss and Insurance**") does not have any bolding other than the title. (Plaintiff's First Amended Complaint ¶ 28). As Defendants did in their original Motion, they not only failed to provide the lease's title but also the first sentence of the lease's paragraph. Importantly, the first sentence, much like the title to the paragraph, reveals that it addresses only property loss stating:

> Management shall not be liable for damage, theft,
> vandalism or other loss of any kind to resident's or
> occupant's <u>personal property</u>, unless such is due to
> management's negligence or intentional conduct. (emphasis
> supplied).

Defendants' argument that paragraph 15 of the lease is an exculpatory clause regarding security is contrary to its plain reading. By its own terms, paragraph 15 cannot be an exculpatory clause because it contains a specific exception for "management's negligence or intentional conduct."

Defendants' reason for failing to provide the Court with the first sentence is evident given its clear nexus to the lease's second sentence that Defendants rely on in their motion ["Management shall not be liable for loss or damage due to criminal acts of other parties"]. The second sentence simply clarifies the first, that

although management may be liable for property damage for its negligence or intentional conduct, it is not liable for property damage committed by criminals.

As Defendants did in their original Motion to Dismiss, the third sentence of paragraph 15 was again also left out of Defendants' Brief which is important in addressing the meaning of the paragraph. Sentence three (3) specifically requires that a resident purchase renter's insurance that provides "comprehensive property insurance for resident's property that insures against any all that's lost due to theft, vandalism, bursting or leaking pipes, fire, wind storm, hail, flooding rain, lightening, tornadoes, hurricanes, water leakage, snow, ice, running water or overflow of water or sewage. (emphasis supplied).

As with sentence one (1), sentence three (3), consistent with the paragraph's title, addresses only property damage. As set forth *infra/supra*, this sentence is consistent with both the paragraph's title and content.

Sentence four (4) of paragraph 15 references injury or damage relating to property loss given that it is defined by "such occurrences" [theft, vandalism, flooding, etc.]. The meaning is shown by the fact that sentence four (4) informs residents that he/she should look solely to their [renter's] insurance carrier for the reimbursement of "his losses for such events [theft, vandalism, etc.]."

Sentence five (5) requires the resident to maintain a renter's policy to

provide liability coverage for <u>resident's negligence</u> which causes injury or damages to management, the owner, the apartment, the apartment community and other persons and their property. Again, the paragraph references absolutely nothing regarding exculpating management for bodily injury.

Sentences four (4) and five (5) work in tandem in interpreting sentence six (6). Under Georgia law, construing sentence six (6) in Plaintiff's favor, the use of the term "resident's protection" is in clear reference to sentence five (5) discussing liability against the resident for his negligence requiring a resident to obtain liability insurance. The latter part of sentence six (6) <u>specifically states it is solely regarding a resident's personal property</u>.

Sentence seven (7), given that it is in the paragraph titled "Property Loss and Insurance," can only be construed to address property loss. Sentence eight (8) given its location within the paragraph titled "Property Loss and Insurance," can only be construed as dealing with property loss. Regardless, the eighth sentence is not an exculpatory clause.

A plain reading of the paragraph, from both the title and its content, dictates that it relates only to property loss. Defendants' piecemeal approach in its presentation to the Court prohibits a fair, clear and necessary understanding of its meaning and effect.

**Special Stipulation**

Although Defendants request the Court rely upon paragraph 34 referencing "All Previously Signed Addenda" there is simply no evidence that the purported Addenda (Exhibit 2 to Exhibit A to Defendants' Renewed Motion to Dismiss) was in effect at the time the lease was executed. The Addenda should not be considered as it relates to Defendants' Motion To Dismiss because it is undated and unverified.

Regardless, even if the Addendum was in effect, like the lease, it solely addresses property loss. This is exemplified by the Addendum's first sentence:

> The management of this apartment community, including the owners and owner's authorized property manager does not pron [sic] urrant [sic] or guarantee the safety and security of <u>resident's personal property</u> against the criminal actions of other resident [sic] or third parties. (emphasis supplied).

The most telling portion of the Addendum is above the signature line. That portion is the only portion of the Addendum which is in all capital letters. Although the <u>entire</u> portion of the Addendum, which is in all capital letters, addresses <u>only</u> property damage, this is best shown by the first sentence "I UNDERSTAND THAT MANAGEMENT IS NOT RESPONSIBLE FOR ANY LOSS OR DAMAGE OF <u>PERSONAL PROPERTY</u>…"

**Font/Bold/Spacing**

The appellate courts, in addition to public policy, focus on the font size, appearances, spacing, etc. relating to the enforceability of exculpatory clauses. Defendants used various methods to draw attention to specific portions of their lease when they drafted these documents to present to Plaintiff.  However, neither the lease nor Addendum used any such methods in the portions of paragraph at issue.

Defendants use all capital letters to draw attention to portions of the lease. See, ¶¶ 3 and 22.  The paragraph at issue does not contain any words spelled in all capital letters.  Various portions of the lease are bolded to attract attention to them. The title to each numbered paragraph is bolded.  The paragraph at issue does not have any bolding of its content other than the title **"Property Loss and Insurance."**

Defendants use titling to separate, organize and focus the reader on the specific issue the titled paragraphs addresses.  Defendants separate the paragraphs, first by number, and second by a description of the paragraph's purpose.  The title of the paragraph at issue relates solely to "property loss."  Given Defendants' decision to title the paragraph only as to property loss, it is impossible to strain its meaning and purpose to include bodily injury resulting from a third party assault

and battery.

Defendants emphasize portions of the lease with increased font size including the title to each paragraph. Other portions of the lease have increased font size dealing with a resident's obligations for payment (paragraph 3), nonrenewal (paragraph 22), etc. In contrast, the font size is identical throughout the paragraph at issue other than the title **"Property Loss and Insurance."**

Defendants use each paragraph's first sentence to express the paragraph's import and purpose. For example, the amount and timing of the rent is the first sentence under paragraph 3 addressing rent. The amount of late payments and timing of same are the first two sentences after paragraph 4 entitled "Late Payments." Consistent with its lease structure, the first sentence of the paragraph at issue deals strictly with property loss.

## LAW AND CITATION OF AUTHORITY

### A. Standard of Review.

A motion to dismiss may only be granted when it appears beyond a doubt that no set of facts could support Plaintiff's claim for relief. In re Theragenics Corp. Securities Litigation, 105 F.Supp.2d 1342 (N.D.Ga. 2000) citing Conley v. Gibson, 355 E.S. 41 (1957). In reviewing a motion to dismiss, the Court must accept the facts pled in the complaint as true and construe them in the light most

favorable to the Plaintiff.  <u>Id.</u>  As set forth *supra*, Plaintiff has made multiple allegations, all of which must be accepted as true, dealing with various issues including the lease, security, notice, fraud, breach of contract, negligent maintenance, inspection, repair, hiring, retention and supervision.

As it relates to Defendants' request that the Court consider evidence outside the pleadings, such circumstances must rely on evidence that is indisputably authentic and which Plaintiff has relied upon in their Complaint.  <u>Id.</u> citing <u>Harris v. Ivax</u>, 182 F.3d. 799 (11th Cir. 1999).  Although Plaintiff's First Amended Complaint contains allegations referencing a breach of contract, it contains multiple other allegations of negligence which are based upon Defendants' duties exclusive of the lease.  Further, as set forth in the Statement of Facts, the "Addendum" is not properly authenticated as it relates to the lease at issue given the fact that it is undated, that the signatures do not match with the lease and there is no evidence as it relates to timing of its execution related to the lease.

**B.**     <u>**All Interpretations of the Lease Must Favor Plaintiff.**</u>

Georgia law is clear that because Defendants drafted the lease, all interpretations of it must favor Plaintiff.  Where construction of the contract is required, it is to be construed most strongly against the party who formulated it. <u>Western Contract Inc. v. State Highway Dept.</u>, 125 Ga. App. 376, 187 S.E.2d 690

(1972). The party who drafts the contract bears the consequences of any ambiguity being construed against them. <u>Department of Human Resources v. Citibank</u>, 243 Ga. App. 433, 534 S.E.2d 422 (2000). Any ambiguity in the language of a contract must be construed against the drafter of the contract. <u>Sun America Bank v. Fairfield</u>, 690 F.Supp.2d. 1342 (N.D. Ga. 2010).

**C.    <u>The  Exculpatory Clause is of no Effect Regarding Personal Injuries and Resulting Damages.</u>**

The exculpatory clause relied upon by Defendants addresses property loss only. This is a proper and plain reading of the paragraph given its title, multiple and repeated references to occurrences resulting in property losses, requirements that the resident purchase renters insurance, etc. The only reference to security is made between sentences addressing property losses such that even if intended to bind Plaintiff, a plain and more common sense reasoning would be that it addresses security relating to property losses. Certainly, Defendants cannot return to the lease, as drafter of the lease, and construe it in a manner inconsistent with its plain meaning, and against public policy, to avoid judgment.

**D.    <u>The Georgia Supreme Court Held the Purported Exculpatory Provision is Void.</u>**

To the extent Defendants contend the lease contains an exculpatory clause, it is void as against public policy. (Plaintiff's First Amended Complaint ¶ 31). The

Georgia Supreme Court long ago held that the exculpatory clause, as interpreted by Defendants, is void as against public policy.  Country Club Apartments, Inc. v. Scott, 246 Ga. 443, 271 S.E. 2d 841 (1980), *reversing* Smith v. General Apartment Company, 133 Ga. App. 927, 213 S.E.2d 74 (1980), *reversing* Jaffe v. Davis, 134 Ga. App. 651, 215 S.E.2d 533 (1975) and *reversing* Atkin v. Hardeman – Long Incorporation, 129 Ga. App. 303, 199 S.E.2d 621(1973).

Defendants reluctantly conceded that a multitude of cases and commentators have "suggested that all exculpatory clauses in leases are contrary to public policy". See, page 10 Defendants' Memorandum of Law.  More accurately, the referenced cases and commentators have specifically held or stated that such clauses are void as a matter of public policy.

Defendants attempt to distinguish Country Club from the instant case contending that it is not a landlord/tenant scenario.  However, a more thorough review of Country Club reveals it overturned multiple cases involving landlord/tenant scenarios.

The cases Country Club reversed are virtually factually identical to the instant case.  A review of the exculpatory clauses in the cases the Georgia Supreme Court overturned is critical.  In Country Club Apartments, the Georgia Supreme Court reversed Smith v. General Apartment Company, 133 Ga. App. 927, 213

S.E.2d 74 (1980). In <u>Smith</u>, the appellate court had upheld an exculpatory clause

where a tenant was raped.  In reversing <u>Smith</u>, the Georgia Supreme Court held

that such a provision under such circumstances violates public policy.  <u>Country</u>

<u>Club Apartments</u>, 246 Ga. at 445.

The Georgia Supreme Court also overruled the exculpatory clause in a

landlord tenant situation in <u>Jaffe v. Davis</u>, 134 Ga. App. 651, 215 S.E.2d 533

(1975).  In <u>Jaffe</u>, the tenant alleged that the property owner allowed independent

contractors to enter her apartment and steal her jewelry while repossessing

furniture but did not make any allegations of negligent construction, repair or

maintenance.  In its holding, Georgia Supreme Court made it clear that such

exculpatory clauses are unenforceable regardless of whether negligent

construction, repair or maintenance is alleged.

Finally, the Georgia Supreme Court overruled and rejected the reasoning in

<u>Atkin v. Hardeman – Long Incorporation</u>, 129 Ga. App. 303, 199 S.E.2d 621

(1973) which involved allegations of negligence in several respects regarding a

fire.  <u>Atkin</u> serves as an example of what the Georgia Supreme Court in <u>Country</u>

<u>Club</u> intended by overruling the enforceability of exculpatory clauses in all

landlord/tenant cases to "like effect."  <u>Country Club</u>, 246 Ga. at 444.

Contrary to Defendants' argument, if the Supreme Court interpreted the

Legislature's expression of public policy to only apply to cases technically brought

under O.C.G.A. § 44-7-13 and O.C.G.A. § 44-7-14, the Court would have affirmed

these three lower court decisions, not overruled them.  The Supreme Court

expressly overruled these cases to demonstrate that the Legislature has deemed all

landlord/tenant exculpatory clauses intending to relieve landlords of accountability

for negligence to be against public policy, void and unenforceable.

Defendants' sole reliance on a trial court's order, the only one known to

Plaintiff in the last thirty three years post – Country Club is in no way controlling

and has no value regarding this matter.[1]  First, as opposed to the Georgia Supreme

Court's longstanding holding, the trial court's order is clearly contrary to

longstanding law.  Second, a lone trial court cannot trump the Georgia Supreme

Court's thirty three (33) year old holding.[2]

**E.**      **O.C.G.A. § 13-8-2(b) Dictates that the Purported Exculpatory Provision is Unenforceable.**

Following Country Club, the Court of Appeals held that [l]eases are among

those contracts that are included within the ambit of the public policy prohibition

---

[1] The trial court's Order was appealed and the case subsequently resolved prior to any appellate holding.

[2] Plaintiff has attached two orders from trial courts specifically rejecting Defendants' argument.  In both cases the trial court relied upon the Georgia Supreme Court's holding in Country Club.  The Orders are attached hereto as Exhibits 1 and 2.

established by O.C.G.A. § 13-8-2(b).  <u>Borg – Warner Inc. Finance Corp. v. Executive Park Ventures</u>, 198 Ga. App. 70, 70-71, 400 S.E.2d  340 (1990).  <u>See also</u>, <u>Nat'l Candy Wholesalers, Inc. v. Chipurnoi, Inc.</u>, 180 Ga.App. 664, 666, 350 S.E.2d 303, 305 (1986).

Pursuant to said statute, the lease at issue is "a contract or agreement relevant to the … alteration, and repair, or maintenance of a building."  O.C.G.A. § 13-8-2(b).  Paragraph 23 of the lease addresses repairs and maintenance and requires actions by both the leasors and leasee.  Because the lease in question clearly addresses "alterations, repairs or maintenance", it is controlled by O.C.G.A. § 13-8-2(b).  The exculpatory provision needs no such nexus, but need only be "in or in connection with or collateral to" an agreement that has such a nexus.  <u>Id.</u>  Therefore, the exculpatory provision is unenforceable and void for public policy.

In addressing the application of O.C.G.A. § 13-8-2(b) relating to landlord/tenant leases, multiple appellate court's, following the Georgia Supreme Court's holding in <u>Country Club</u>, held that purported exculpatory provisions are void under such statute.  For example, the Eleventh Circuit held that such provision was unenforceable in <u>Cain v. Vontz</u>, 703 F.2d 1279 (11th Cir. 1983) involving a victim murdered in an apartment due to a landlord's negligence in maintaining safety against foreseeable crimes and the failure to repair a lock.  Plaintiff has

made various allegations regarding maintenance set forth within Plaintiff's First Amended Complaint.  (Plaintiff's First Amended Complaint, ¶¶ 36, 37, 38, 59, 60, 65, 68).

**F.    The Exculpatory Clause is Unenforceable as a Matter of Law Because it is Not Explicit, Prominent, Clear and Unambiguous.**

Because exculpatory clauses waive substantial rights that could amount to an accord and satisfaction of future claims that require a meeting of the minds on the subject matter, they must be <u>explicit, prominent, clear and unambiguous</u>. <u>Parkside Ctr., Ltd. v. Chicogaland Vending, Inc.</u>, 250 Ga. App. 607, 611 (2001) (affirming the trial court's refusal to enforce an exculpatory clause in a lease). (emphasis supplied).

In <u>Parkside</u>, the trial court refused to enforce the purported exculpatory clause because it "has type face the same size as all of the surrounding numbered paragraphs" on the same page.  <u>Id.</u> at 611.  In that regard, "indications that an exculpatory clause is sufficiently explicit, prominent, and clear include: being set forth in a separate paragraph; using a heading for the clause; and using bold or distinguishing type-face." <u>Automated Telemarketing Services, Inc. v. Aspect Software, Inc.</u>, 2010 WL 4720866, *3(DM 2010).  <u>Automated</u> is important because it applied Georgia law to a Georgia contract.  <u>Id.</u> at n. 4.

An exculpatory provision is unenforceable if it, "is in extremely small print

and single spaced," or if it contains, "no bold type-face which might distinguish some terms and conditions from others." <u>JVC Am, Inc. v. Guardsmark, LLC</u>, 2006 WL 2443735 (N.D. Ga. 2006). In <u>JVC</u>, the court held, "[w]ithout difficulty the exculpatory clause was not "<u>prominent, explicit, or clear</u>" and thus unenforceable as a matter of law.

Applying this case law to the instant case, assuming arguendo paragraph 15 is an exculpatory clause, the sole sentence asserted to be exculpatory was, for lack of a better word, is hidden in a portion of the lease titled in larger type face and bolded **"Property Loss and Insurance."** Defendants' claim cannot pass the test set forth *supra* given that the provision is in the middle of a paragraph dealing with property loss, not separated to any degree, not bolded, not capitalized nor is it of a larger font size. In sum, there is absolutely nothing to draw the attention of anyone, particularly given the single space nature of the lease combined with its length. As such, under Georgia law, including that from the Northern District, holds that such a provision is simply unenforceable.

The unenforceability of the purported clause was punctuated in <u>Office Depot, Inc. v. Dist. at Howell Mill, LLC</u>, 309 Ga. App. 525, 530, 710 S.E.2d 685 (2011). In <u>Office Depot</u>, the Court held that rules of interpretation "require us, among other things, to construe a contract clause <u>in conjunction with its heading</u>."

(emphasis supplied).  In that regard, the heading set forth and relied upon by Defendants addresses only **"Property Loss and Insurance."**

In addition, an exculpatory clause is not sufficiently "clear and unambiguous" if it does not specifically mention the cause of action released. Dep't of Transp. v. Arapaho Const., Inc. 180 Ga. App. 341, 343 (1986), aff'd, 257 Ga. 269 (1987).  In Arapaho, a party relied upon an exculpatory clause in a breach of contract action which did not mention a breach of contract.  The trial court construed the provision against its drafter, refused to give it effect and was affirmed.  Applying Arapaho to the instant case, a plain reading of the purported exculpatory clause dictates that it only addresses property loss.  The purported clause in no way references any bodily injury claims.

## G.   Defendants' Reliance on an Unrelated Condominium Case is Misguided.

The factual and legal circumstances in Bradford Square Condominium Assn., Inc., v. Miller, 258 Ga. App. 240, 573 S.E.2d 405 (2002) were specifically noted by the appellate court which limited its holding only to those specific facts involving condominium owners suing itself as the condo association such that it is in no way applicable to the instant case.  In Bradford, Plaintiff was an actual owner of a condominium and therefore, as correctly assessed by the appellate court, also a member of the Defendant condominium association.  In other words, the appellate

court prohibited the lawsuit because of the unique interrelationship between a condominium association and the unit owners/members that are, in fact, the association. In <u>Bradford</u>, the appellate court reasoned that if the case was to move forward, it would basically be the Plaintiff owner/member suing itself as a member of the Defendant Association.

**H.**     <u>**Plaintiff Has Made Sufficient Allegations Regarding Negligence Per Se.**</u>

Although Plaintiff has a good faith belief the allegations will be proven true after engaging and completing discovery, based upon the allegations in Plaintiff's First Amended Complaint to be taken as true, O.C.G.A. § 44-7-13 and O.C.G.A. § 44-7-14 reveal Defendants' culpability in violating those statutes resulting in the incident at issue.

Said statutes require that the landlord is responsible for damages arising from defective construction or for damages arising from the failure to keep the premises in repair. There are multiple references within Plaintiff's First Amended Complaint relating to Defendants' failure to properly repair, inspect and maintain the premises. <u>See</u>, ¶¶ 36, 37, 38, 39, 48, 58, 59, 60, 65 and 68. Further, the breaches set forth in Plaintiff's allegations were a proximate cause of the incident and resulting damages. As such, Plaintiff has proved the necessary nexus between the incident and the breach.

Defendants' breach of one or both of these statutes, in and of itself, is negligence per se.  As  a result, Defendants are liable to Plaintiff under said statute for their negligence given that Plaintiff has pled the nexus between Defendants' actions as set forth within the aforementioned paragraphs related to the statute and the resulting incident and damages.

I.  **Defendants' Assertions Regarding Negligent Supervision, Hiring, Training and Retention are Not Accurate as to Georgia Law.**

Plaintiff's First Amended Complaint alleges, legally and factually, that Defendants hiring of employees and agents, as well as their training, supervision and retention, were a proximate cause of the incident and Plaintiff's resulting damages.  (Plaintiff's First Amended Complaint ¶¶ 57-61).

Defendants sole reliance upon TGM Ashley Lakes, Inc. v. Jennings, 264 Ga.App. 456, 596 S.E.2d 807 (2003) is greatly misplaced.  Defendants somehow read Jennings to assert that Plaintiff's claim fails unless Plaintiff's assailants were Defendants' employees.  This is simply not the law.  Jennings focused exclusively on issues of liability and standards of care when the employee is the actual tortfeasor in terms of background checks, etc.  Plaintiff has not made such assertions or allegations in the instant case.  Plaintiff's cause of action is that Defendants hired incompetent personnel, failed to properly train or supervise them and finally, failed to terminate or demote them when it was clear they were not

competent to manage. These employees' actions, or inactions, led to Plaintiff's injuries even though the employees did not physically attack Plaintiff.

The correct standard in negligent hiring cases is whether the hirer knew, or in the exercise of ordinary care, should have known, that the servant was incompetent and that the incompetency resulted in damage to whom the servant was hired. Cherry v. Kelly Services, Inc., 171 Ga.App. 235, 319 S.E.2d 463 (1984). Cherry holds that as long as the alleged negligent hiring led to damages, the claim survives summary judgment. In the instant case, as set forth within Plaintiff's First Amended Complaint, the employees and agents hired, supervised, retained and trained by Defendants were done so in a negligent manner. Plaintiff alleged Defendants' employees and agents were not qualified to manage, inspect or supervise the premises. As a result, crime was allowed to run about unabated, security was inadequate and not properly monitored, all which resulted in the attack upon Plaintiff.

## J.     Defendants' Arguments Regarding Fraud and Misrepresentation are Incorrect.

Defendants contend that the merger clause bars Plaintiff's cause of action regarding fraud and misrepresentation. However, a review of Defendants' lease reveals that it contains virtually all duties towards Plaintiff as it relates to payment, repairs, eviction, etc. but has absolutely no duties whatsoever as it relates to a

habitable apartment, maintaining the apartments in a safe manner, etc. Certainly, Defendants cannot argue or suggest that they did not have a contractual or a legal obligation under Georgia law to contractually provide Plaintiff with a habitable or safe living environment.

As it relates to Defendants' legal obligation, it is the basis of any landlord/tenant relationship, that a landlord [Defendants] will provide a tenant [Plaintiff] with a safe and habitable living environment. Taking Defendants' argument to its illogical conclusion, because Defendants did not place providing Plaintiff with a habitable living environment in the lease, by Defendants' definition, Defendants are not required to provide Plaintiff with same. Certainly, Defendants are required to do so. In that regard, Defendants are required to be honest in its representation. Defendants could certainly have said he or she is unaware of the level of crime or that the area is relatively safe or unsafe. Instead, as alleged in Plaintiff's First Amended Complaint, Defendants chose to state that the apartments were safe and secure. As a result, Plaintiff was fraudulently induced to enter into the lease/contract based upon Defendants' intentional or negligent misrepresentation.

The instant case is far from the "sales pitch" set forth in Anderson v. Atlanta Comm. For Olympic Games, Inc., 261 Ga.App. 895, 584 S.E.2d 16 (2003) wherein

statements that Atlanta was "the safest place on the planet" were held to be mere opinions that could not support a fraud claim. In the instant case, Plaintiff specifically inquired as the basis for entering into a contractual relationship with Defendants to which Defendants specifically provided the information.

Certainly, there are hundreds, if not thousands, of items including running water, parking, pool area, etc. that are not contained within the lease that were certainly part of the contract, and reason for the contract, between the parties. Both parties can agree that Plaintiff contracted for a safe place to live with Defendants pursuant to O.C.G.A. § 51-3-1 and that should not be obviated by Defendants' drafting of the lease.

**K.      Defendants Breached the Contract with Plaintiff.**

As set forth *supra*, Defendants had a legal obligation to keep The Apartments safe. The lease does not state that The Apartments will be kept in a safe condition pursuant to Georgia law. Because the lease does not state same, Defendants certainly cannot contend the law is obviated or that they no longer have a contractual obligation to their tenant to do so. As such, their failure to keep the premises safe by adding, monitoring or maintaining the proper level of security is a breach of the contract with Plaintiff.

**L.** **Plaintiff has Properly Pled Allegations Related to Nuisance.**

Plaintiff's First Amended Complaint made numerous allegations as it relates to nuisance. In the instant case, Plaintiff properly pled Defendants knew of the continuing unsafe condition at the apartments given the inordinate and repeated crimes. (Plaintiff's First Amended Complaint ¶ 66). However, due to the nuisance created by Defendants, and failing to act as a result, Plaintiff was attacked. (Id. at ¶¶ 67-70).

Defendants assert that, "The owner of the property cannot be liable if it has no duty to control or stop the nuisance." See, Defendants' Brief p. 20. However, in the instant case, as the owner/occupier of the premises, Defendants did have a specific duty to keep the premises safe including taking appropriate measures to eliminate crime including such crimes Defendants knew or should have known about including rape, armed robbery, carjacking, shootings, drug sales, etc. See, O.C.G.A. § 51-3-1.

Clearly, Defendants were well aware of the crimes constituting a nuisance, but chose to ignore them. As a result, Plaintiff's well pled allegations as it relates to nuisance are well founded and Plaintiff's nuisance cause of action survives.

WHEREFORE, for all the reasons set forth herein, Plaintiff respectfully requests that Defendants' Renewed Motion To Dismiss be denied.

This 23rd day of August, 2013.

JAMES A. RICE, JR., P.C.

/s/ James A. Rice, Jr.
James A. Rice, Jr.
Georgia Bar Number 602811
Attorney for Plaintiff

JAMES A. RICE, JR., P.C.
563 Spring Street, NW
Atlanta, GA  30308
404-255-4448 (phone)
404-842-7710 (facsimile)
E-Mail:  jim@ricefirm.com

Pursuant to Local Rules 5.1 and 7.1, counsel for Plaintiff certifies that the document has been prepared in Times New Roman, 14 point font, and that the document does not contain more than 10 characters per inch of type.

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TARA THAPA,                          )
                                     )
                    Plaintiff,       )        CIVIL ACTION
vs.                                  )
                                     )        FILE NO. 1:13-CV-01031-AT
LAKESHORE ATLANTA                    )
APARTMENTS, LLLP and                 )
VENTRON MANAGEMENT,                  )
LLC,                                 )
                                     )
                    Defendants.      )

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing Plaintiff's

Memorandum of Law in Opposition to Defendants' Renewed Motion to Dismiss

with the Clerk of Court via the CM/ECF system which will automatically send

electronic mail notification of such filing to the following counsel of record:

Jacob Edward Daly
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339-5948

This 23rd day of August, 2013.

JAMES A. RICE, JR., P.C.

/s/ James A. Rice, Jr.
James A. Rice, Jr.
Georgia Bar Number 602811
Attorney for Plaintiff